# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REBECCA C. GRABOWSKI-BRIDGES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-13-178-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

The claimant Rebecca C. Grabowski-Bridges requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1]  Step one requires the claimant to establish that she is not engaged in substantial gainful activity.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 16, 1974, and was thirty-six years old at the time of the most recent administrative hearing (Tr. 484, 794). She completed her GED and approximately 60 hours of college course work, and has worked as a receptionist, clerk typist, and merchandise deliverer (Tr. 155, 796, 812). The claimant alleges she has been unable to work since October 1, 2003, due to a fractured back, chronic pain, loss of use of ankle, depression, and alcoholism (Tr. 149-150).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 28, 2004. Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 23, 2007 (Tr. 16-25). The Appeals Council denied review, but this Court reversed in Case No. CIV-08-142-KEW, and remanded the case to the ALJ with instructions to: (i) include *all* the claimant's impairments when questioning the vocational expert, (ii) properly evaluate the treating physician opinion of Dr. Cross, and (iii) properly evaluate the claimant's credibility (Tr. 600-610). ALJ Michael A. Kirkpatrick conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated August 20, 2010 (Tr.580-597). The Appeals Council again denied review, so ALJ

Kirkpatrick's opinion is the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

ALJ Kirkpatrick made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work, 20 C.F.R. §§ 404.1567(a), 416.967(a), except that due to psychological factors, she was further limited, but able to perform both simple, unskilled tasks and also detailed semi-skilled tasks (but not complex skilled tasks) (Tr. 585). The ALJ concluded that the claimant was not disabled because she could perform her past relevant work as receptionist and clerk typist (Tr. 596).

## Review

The claimant contends that the ALJ erred by: (i) improperly assessing her RFC during all three phases of step four, (ii) improperly evaluating the opinions of her treating psychologist and licensed clinical social worker, and (iii) failing to properly assess her credibility. The Court agrees the ALJ erred in assessing her RFC, and the decision of the Commissioner should therefore be reversed and the case remanded.

The claimant had the severe impairments of major depression, avoidant personality disorder, dysthymic disorder, and status post internal fixation for left ankle fracture with subsequent fixation device (screw) removal (Tr. 582).

The claimant underwent a psychological evaluation on September 19, 2003, achieving a full scale IQ score of 107, with a verbal scale IQ of 104 and performance IQ of 109 (Tr. 224). Dr. J. Lawrence Muirhead assessed the claimant's functional

limitations to include an extensive history of alcohol abuse, ongoing agitated depression of mild to moderate severity, and interpersonal adjustment compromised by Avoidant Personality Disorder (Tr. 226-227). He diagnosed her with alcoholism, dysthymic disorder, and avoidant personality disorder, along with moderate psychological stressors, unemployment, and relationship difficulties (Tr. 227).

The claimant received treatment at a mental health facility in Texas, and on September 2, 2004, she was diagnosed with depression and assessed a Global Assessment of Functioning Score of 45 (Tr. 298). Notes indicate that her impairments were significant, characterized by sleep disturbance, eating disturbance, no regular employment for the previous year, and living with family due to financial difficulties (Tr. 298). On March 29, 2006, the claimant was again assessed with major depression currently moderate, PTSD symptoms, alcohol dependence sustained full remission, avoidant personality disorder traits, and rule out substance-induced depression (Tr. 363). She was noted to have a serious impairment in sleeping, and assessed a GAF score of 49 (Tr. 365).

Robert Cross, Ph.D., completed a Mental RFC assessment of the claimant on February 6, 2007, indicating that she had eleven moderate limitations that affected but did not preclude her ability to function (Tr. 183-184). He stated that the claimant was only capable of tolerating work stresses on a part-time basis, and that if she were placed in a full-time setting, he estimated she would be expected to be absent 4 days on a monthly basis (Tr. 184). He described her as having emotional lability, concentration difficulties, and a low frustration tolerance, and further evaluated her as having difficulty

understanding social cues, and getting distracted easily (Tr. 185). He believed she was capable of remembering, comprehending, and carrying out simple instructions, but that she would have difficulty with complex instructions, and that she may have difficulty responding appropriately to work pressure, supervision, and co-workers (Tr. 186). Treatment notes from Dr. Cross indicate that he consistently assessed her with a GAF of 51, and goals included working on her self-esteem and improving anxiety and depression (Tr. 458-476). He further submitted a letter dated February 27, 2007, stating that he had been treating the claimant weekly since September 2006, with mixed results – that she had made some progress, but her moods had been mixed with sadness and anger, and that she experienced a low frustration tolerance, irritability, sleep difficulties, emotional lability, and some difficulty with memory and concentration (Tr. 187).

Licensed Clinical Social Worker Steve Long completed a Mental RFC assessment in conjunction with the Appeals Council remand regarding the claimant's limitations, finding she had three severe limitations, five marked limitations, and five moderate limitations and that drug or alcohol abuse were not factors (Tr. 754-755). He stated that "her problems manifest in her inability to make and maintain friendships, her feelings of being victimized or persecuted by others, suspicions that border on paranoid with regards to the intentions of others, all of which ultimately result in impairment in the form of conflict and/or withdrawal from social and work situations" (Tr. 756). He described her mental status as fragile, and fearful of a relapse of her depression symptoms, suspicious of others, and hypervigilant for evidence supporting her suspicions (Tr. 756). He further stated that she was "not able to appropriately negotiate the social atmosphere and politics

of an office setting. Thought processes tend to distort, and reality testing impaired, in social setting" (Tr. 756). He described her prognosis as guarded because any stressor could undermine her progress and result in a recurrence of symptoms (Tr. 757). He found she could do simple and complex work, but would have difficulty in a work setting. He diagnosed her with major depressive disorder, single episode in partial remission; PTSD; avoidant personality disorder; impairment in social and occupational functions; and assessed her with a GAF of 45 (Tr. 757). On August 17, 2009, Mr. Long completed a "Mental Health Form," diagnosing the claimant with PTSD and adjustment disorder, as well as problems related to her social environment, along with a GAF of 56 (Tr. 781). At that time, he noted that she was experiencing a disruption of social and family relations, and stated that it was "clear that [claimant] has been suffering from anxiety and depression since childhood which she controlled with denial, caretaking role in her family, and later alcohol" (Tr. 781-782).

A state reviewing physician, J. D. Marler, Ph. D., found on February 9, 2005, that the claimant had mild restrictions of activities of daily living and difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 346). Dr. Marler also completed a Mental RFC assessment, indicating that the claimant was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods (Tr. 352).

The claimant testified at the most recent administrative hearing that her biggest problem in maintaining a job would be consistency, in that she would miss work a

number of days, believe that she was not doing a good job, and have difficulty communicating with others (Tr. 800). She has moved from Dallas, and testified that she struggled to establish places she was comfortable socializing, and that she had to switch to online college courses because attending classes was too difficult for her (Tr. 801-802). She indicated that she tries to limit herself to sitting only thirty minutes at a time, because sitting for longer causes increased pain, and that she spends most of the day lying down, and that standing causes increased pain to her ankle (Tr. 802-803).

In his written opinion, the ALJ summarized the claimant's hearing testimony and provided an extensive summary of the medical evidence. He thoroughly summarized Dr. Cross's records, then rejected Dr. Cross's opinion as not well-supported by medically-acceptable clinical and diagnostic techniques and as inconsistent with other evidence in the record (Tr. 589). The ALJ explained why Dr. Cross's opinion was "not the least bit probative" as follows: (i) he failed to provide any mental status findings, (ii) nothing else in the record supports Dr. Cross's opinion, (iii) his progress notes indicate no abnormal medical findings, and (iv) his RFC assessment was "discordant with claimant's ability to function in an academic environment as well as her ability to function in competitive employment during many of the years she alleges disability" (Tr. 589-590). Furthermore, he found there was no showing that Dr. Cross had reviewed the other medical records in evidence, and Dr. Cross was the only medical source to indicate the claimant would be absent more than four days a month (Tr. 591). He then turned to Mr. Long's opinion, noting that he was to analyze it as required by Soc. Sec. Rul. 06-3p and 09-2p. He made much of the fact that Mr. Long had indicated he did not begin seeing the claimant until

April 1, 2009, and found that he identified nothing credible to support his opinion (Tr. 592). The ALJ further found that Mr. Long's GAF scores of 45 and 56 conflicted with each other, and that Mr. Long was not an acceptable medical source capable of rendering a diagnosis of PTSD (Tr. 593). The ALJ therefore found he was "unable to give much weight" to Mr. Long's opinion (Tr. 593).

The dispositive issue in this case is whether the ALJ properly analyzed the claimant's severe mental impairments. "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To apply the "psychological review technique" (PRT), the ALJ must first evaluate if the claimant has a "medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), then determine the degree of function he has lost by assessing his level of functioning in four specific areas. *See Cruse*, 49 F.3d at 617. The specific areas are: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(d)(2). Furthermore, the ALJ must specifically document his findings, *inter alia*, by discussing the evidence he considered in reaching his conclusions about the claimant's functionality. *See, e. g., Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the

ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988); 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("At the administrative law judge hearing [level], the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)"); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (although not required to prepare the PRT form, the ALJ is "to document application of the technique in the decision."), *quoting* 20 C.F.R. §§ 1520(a)(e), 416.920(e).

In analyzing the loss of functionality suffered by the claimant in connection with her mental impairments, the ALJ found at step three that the claimant had mild restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and no extended episodes of decompensation (Tr. 584). At step four, however, the ALJ did not discuss how the claimant's moderate limitations in concentration, persistence, and pace affected her RFC, and did not discuss, much less explain why he rejected, the findings of the state agency physician that that the claimant was moderately limited in the ability to maintain attention and concentration for extended periods. *See, e. g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."). *See also Givens v. Astrue*, 251

Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job. Even assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."); *Berryhill v. Barnhart,* 64 Fed. Appx. 196, 200 (10th Cir. 2003).

A thorough analysis of the claimant's mental limitations was central to a proper disposition of this case. Here, the ALJ failed to properly analyze the opinion of Dr. Marler, *i. e.*, the ALJ failed to explain why he adopted some (but not all) of the mental limitations applicable to the claimant, despite the fact that Dr. Cross's opinion also supports this finding. Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although not bound by the determination of a state agency physician, an ALJ may not simply ignore it and must explain the weight it is given in the decision. *Id. See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it."), *citing* 20 C.F.R. § 416.927(f)(2)(ii). In this case, the ALJ adopted Dr. Marler's findings at step three, but gave no explanation for apparently rejecting the findings related to her concentration limitations at step four (Tr. 346, 352, 584-596). *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings'

RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly analyze medical evidence as discussed above, the decision of the Commissioner must be reversed and the case remanded for a proper analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**